UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA HOBES,

                      Plaintiff,

-against-

A. RODRIGUEZ, et al.,

                      Defendants.

**OPINION & ORDER**

24-CV-02484 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Joshua Hobes ("Plaintiff") brings this action *pro se* and *in forma pauperis* against Anthony Rodriguez, Superintendent Edward Burnett, Kevin Fierro, Jordano Rivera-Padilla, Anthony Stuetzle, Joseph Bianchi, Glennis Nelson, and Ray Lauterett, asserting claims for relief under 42 U.S.C. § 1983 predicated upon violations of his constitutional rights. (Doc. 1, "Compl.").

    Pending before the Court is Defendants Rodriguez, Burnett, and Fierro's (together, the "Moving Defendants") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). None of the other Defendants join this motion, having all filed answers to the Complaint. (Docs. 42, 54). The Moving Defendants filed their motion and supporting memorandum of law on February 7, 2025. (Doc. 56; Doc. 57, "Def. Br."). Plaintiff did not file any opposition to the motion.[1]

---

[1] Plaintiff's opposition was due on March 10, 2025. (Doc. 51). The docket indicates that a copy of the Court's Order setting the briefing schedule was mailed to Plaintiff on January 10, 2025. (*See* Jan. 10, 2025 Entry). On February 7, 2025, the Moving Defendants attached as an exhibit to their motion to dismiss an affidavit of service indicating service of the motion papers on Plaintiff. (Doc. 56-1). On February 21, 2025, the Court granted Plaintiff's application to extend his deadline to oppose the Moving Defendants' motion to May 9, 2025. (Doc. 59). Plaintiff did not file opposition papers by that deadline. On May 21, 2025, the Court *sua sponte* extended Plaintiff's time to oppose the motion to June 20, 2025, warned Plaintiff no further extensions would be granted, and cautioned that if he failed to file opposition by June 20, 2025, the motion would be deemed fully submitted and unopposed. (Doc. 63). The docket indicates that a copy of the Court's May 21, 2025 Order was mailed to Plaintiff. (*See* May 22, 2025 Entry). Plaintiff failed to file opposition by June 20, 2025. On July 11, 2025, Plaintiff filed a letter seeking another extension to oppose

For the reasons set forth below, the Moving Defendants' unopposed motion to dismiss is GRANTED.

## BACKGROUND

Plaintiff was an inmate at Fishkill Correctional Facility ("Fishkill") in 2022. (Compl. at 5).[2] Plaintiff got into a verbal altercation, in February of that year, with Defendants Rivera-Padilla and Stuetzle. (*Id.*). Plaintiff alleges that the correctional officers then physically attacked him— "stepp[ing] on [his] [] foot," "slam[ming]" him to the ground, and "punch[ing]" him. (*Id.*). Defendant Bianchi also joined the other correctional officers and "sprayed" Plaintiff with a "chemical agent[]." (*Id.*). Defendant Rivera-Padilla wrote a misbehavior report about this incident. (*Id.*).

On March 9, 2022, Fishkill staff held a "tier hearing" about this misbehavior report ("First Disciplinary Hearing"). (*Id.* at 6). Defendant Fierro, who presided over the hearing, found Plaintiff "guilty on all charges" and sentenced him to 50 days in the special housing unit ("SHU"), as well as 50 days' loss of commissary, packages, and phone privileges. (*Id.*). Plaintiff alleges that while being escorted back to his cell after this hearing, Defendants Rivera-Padilla and Stuetzle physically attacked him—this time with the help of Defendant Nelson. (*Id.* at 6). As a result of this incident, Defendant Rivera-Padilla wrote another misbehavior report about Plaintiff. (*Id.* at 7).

From March 22, 2022 to March 29, 2022, Defendant Fierro presided over a "tier hearing" about the misbehavior report concerning the March 9, 2022 incident ("Second Disciplinary

---

the pending motion. (Doc. 68). The Court denied Plaintiff's application and noted that "[t]he Court previously informed Plaintiff that '[n]o further extensions of time'" would be granted. (Doc. 69). Accordingly, as Plaintiff has been given ample notice of the pending motion and time to oppose it, the Court deems the Moving Defendants' motion to dismiss unopposed and fully submitted.

[2] Citations to specific pages of the Complaint and other filings on the docket correspond to the pagination generated by ECF.

Hearing" and together with the First Disciplinary Hearing, "Disciplinary Hearings"). (*Id.*). Defendant Fierro again found Plaintiff "guilty of all charges" and sentenced him to 60 days in SHU and 60 days of loss of commissary. (*Id.*). Defendant Rodriguez later affirmed both decisions by Defendant Fierro in response to Plaintiff's appeals. (*Id.* at 7).

## STANDARD OF REVIEW

I.    Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action when the district court lacks the statutory or constitutional power to adjudicate it." *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019).[3] "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.   Rule 12(b)(6) Standard

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to

4

meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Moreover, when deciding an unopposed motion to dismiss, as is the case here, "the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-05286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). It is, therefore, appropriate for the Court to test the sufficiency of the claim challenged on this motion even without the benefit of formal opposition to the motion.

## ANALYSIS

Liberally construed, Plaintiff presses claims against Defendants Fierro, Rodriguez, and Burnett for denial of procedural due process in violation of the Fourteenth Amendment. Plaintiff also brings a claim of excessive force in violation of the Eighth Amendment against Defendant

Burnett. Plaintiff asserts these claims under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)).

I. Eleventh Amendment Immunity

The Moving Defendants argue that insofar as Plaintiff intends to press claims against them in their official capacities under 42 U.S.C. § 1983, those claims must be dismissed by operation of the Eleventh Amendment. (Def. Br. at 23). The Court agrees.

The Eleventh Amendment directs that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This language bars suits, even those arising under federal law, against a state, or against a state employee acting in his or her official capacity, by one of its own citizens. *Woods v. Rondout Valley Centr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("A suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself.").

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-07953, 2020 WL 7630354, at *2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original)). To that point, it is well-settled that "New York has not waived its sovereign immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New York*, No. 13-CV-00927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the [Eleventh] Amendment.").

Because the Eleventh Amendment deprives this Court of subject-matter jurisdiction and neither exception applies, the claims for relief under 42 U.S.C. § 1983 are dismissed under Rule 12(b)(1) to the extent they seek relief against the Moving Defendants in their official capacities. This result does not affect the 42 U.S.C. § 1983 claims against the Moving Defendants in their individual capacities. The Court therefore considers the Moving Defendants' arguments for dismissal of those claims for relief under Rule 12(b)(6).

II.     Personal Involvement

The Moving Defendants argue that Plaintiff fails to plead the personal involvement of Defendants Burnett or Rodriguez in the alleged deprivation of constitutional rights. (Def. Br. at 16-19). "As a fundamental prerequisite, 'to establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation.'" *Lockett v. City of Middletown*, No. 19-CV-08255, 2021 WL 1092357, at *4 (S.D.N.Y. Mar. 22, 2021) (quoting *Boley*

7

*v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017)). "Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint 'fatally defective on its face.'" *Id.* (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987)). To show personal involvement, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

Here, Plaintiff does not allege that Defendant Burnett participated in the alleged excessive force or Disciplinary Hearings. Instead, Plaintiff alleges only that Defendant Burnett, as Superintendent of Fishkill Correctional Facility, should have done more "to stop [] assaults and battery" and that he "appointed" Defendant Fierro to conduct the Disciplinary Hearings. (Compl. at 3, 6-7). This, "without more," is "insufficient" to show "personal involvement under [S]ection 1983." *Brown v. Cnty. of Westchester*, No. 22-CV-06146, 2024 WL 21937, at *9 (S.D.N.Y. Jan. 2, 2024); *see also Ellis v. Kim*, No. 23-CV-05309, 2024 WL 4882702, at *6 (S.D.N.Y. Nov. 25, 2024) (holding that the plaintiff failed to plead personal involvement under Section 1983, despite alleging that the supervisor defendant was aware of the alleged deprivation of constitutional rights).

As to Defendant Rodriguez, Plaintiff's sole allegation is that he affirmed Defendant Fierro's decisions. (Compl. at 7). Plaintiff does not allege that Defendant Rodriguez participated in any way in the Disciplinary Hearings. "Failing to correct another officer's violation does not suffice" to plead personal involvement under *Tangreti*. *Smart v. Annucci*, No. 19-CV-07908, 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) ("[T]hat Venettozzi denied Plaintiff's administrative appeal[] cannot support the inference that [] [Venettozzi], through '[his] own individual actions, [] violated the Constitution.'" (quoting *Tangreti*, 983 F.3d at 615)); *accord Washington v.*

*Fitzpatrick*, No. 20-CV-00911, 2021 WL 966085, at *10 (S.D.N.Y. Mar. 15, 2021); *Jones v. Blekis*, No. 23-CV-01641, 2024 WL 230288, at *4 (D. Conn. Jan. 22, 2024).

Accordingly, the Moving Defendants' motion is granted as to Defendants Burnett and Rodriguez and the claims against them are dismissed for lack of personal involvement.[4]

III.     Fourteenth Amendment Procedural Due Process Claim for Relief

Plaintiff pleads that Defendant Fierro deprived him procedural due process of law in violation of the Fourteenth Amendment at the Disciplinary Hearings. (Compl. at 6-7). The Moving Defendants argue that Plaintiff fails to adequately allege the elements of his procedural due process claim. (Def. Br. at 11-16).

"[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (quoting *Adams v. Annucci*, No. 17-CV-03794, 2018 WL 4608216, at *6 (S.D.N.Y. Sept. 25, 2018) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020). As to the first element, "the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 510 (S.D.N.Y. 2012) (quoting *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001)). An inmate's liberty interest is implicated by prison disciplinary proceedings only if the sentence "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Washington v. Afify*, 681 F. App'x 43, 45 (2d Cir. 2017). "Although the Second Circuit has 'explicitly avoided a bright

---

[4] Given the Court's ruling herein, the Court need not and does not address the Moving Defendants' other arguments for dismissal of Plaintiff's claims against Defendants Burnett and Rodriguez. (Def. Br. at 19-23).

9

line rule that a certain period of SHU confinement automatically fails to implicate due process rights,' it has nevertheless established certain 'guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed.'" *George v. County of Westchester*, No. 20-CV-01723, 2021 WL 4392485, at *12 (S.D.N.Y. Sept. 24, 2021) (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)). "[T]ypical punitive segregation conditions imposed for 101 days or fewer generally do not constitute 'atypical' conditions of confinement." *Abdur-Raheem v. Caffery*, No. 13-CV-06315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015); *see also Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). On the other hand, when a prisoner has been confined between 101 and 305 days, courts are generally required to develop a "detailed record of the conditions of the confinement relative to ordinary prison conditions" to determine whether the prisoner's liberty interest was infringed. *Palmer*, 364 F.3d at 64–65. Finally, confinement of 305 days or more ordinarily, on its own, rises to the level of an "atypical and a significant hardship." *Colon*, 215 F.3d at 231.

      As for the second element, the Second Circuit instructs that:

> [i]n a prison disciplinary hearing, due process rights provide that at a minimum, a prisoner is entitled to be confronted with the accusation, informed of the evidence against him and afforded a reasonable opportunity to explain his actions. More specifically, an inmate must receive advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions.

*Williams v. Korines*, 966 F.3d 133, 143 (2d Cir. 2020) (internal citations and quotation marks omitted).

      A. <u>Liberty Interest</u>

    Plaintiff was sentenced to 50-days in SHU and 50-days of loss of commissary, packages, and phone privileges in the First Disciplinary Hearing; and 60-days in SHU and 60-days of loss of

commissary in the Second Disciplinary Hearing. (Compl. at 6-7). The Moving Defendants argue that none of these sentences establishes a liberty interest. (Def. Br. at 12-13). The Court agrees with respect to Plaintiff's loss of commissary, packages, and phone privileges. "[C]ourts in the Second Circuit have consistently held the loss of commissary, package, and visitation privileges does not implicate liberty interests." *Taylor v. Glover*, No. 21-CV-06452, 2024 WL 5090172, at *8 (S.D.N.Y. Dec. 11, 2024); *see, e.g.*, *McLellan v. Chapdelaine*, No. 16-CV-02032, 2017 WL 388804, at *4 (D. Conn. Jan. 27, 2017) (holding that loss of commissary for sixty days did not constitute significant or atypical hardship).

With respect to Plaintiff's time in SHU, the Moving Defendants spotlight that neither of Defendant Fierro's sentences exceeded 101 days. (Def. Br. at 12-13). This minimal length of confinement, the Moving Defendants argue, fails to raise a liberty interest under established precedent. (*Id.*). The Moving Defendants, however, overlook that the Second Circuit has instructed lower courts to "aggregate[]" separate SHU sentences "for purposes of the *Sandin* inquiry" when they constitute a "sustained period of confinement." *Giano v. Selsky*, 238 F.3d 223, 226 (2d Cir. 2001); *see also Reynoso v. Selsky*, 292 F. App'x 120, 122 (2d Cir. 2008) ("Overlapping disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether a liberty interest was violated."). "[S]eparate SHU sentences constitute a sustained period of confinement [that may be aggregated] when (1) they are contiguous and (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Falls v. Campbell*, No. 17-CV-00035, 2019 WL 6251245, at *6 (S.D.N.Y. Nov. 21, 2019) (alteration in the original and quoting *Taylor v. Artus*, No. 05-CV-00271, 2007 WL 4555932, at *8 & n.40 (N.D.N.Y. Dec. 19, 2007)). Here, Plaintiff alleges that the Disciplinary Hearings took place within the same month, and Defendant

Fierro imposed separate sentences at each hearing. (Compl. at 6-7). Moreover, it is unclear from the pleading whether Plaintiff served the SHU sentences consecutively or concurrently. As a result, and giving Plaintiff all reasonable inferences, the Court considers in this posture these two sentences—totaling 110 days in SHU—together in the aggregate. *See Toliver v. Stefinik*, No. 12-CV-00077, 2016 WL 3349316, at *8 (N.D.N.Y. June 15, 2016) (aggregating where the plaintiff "served consecutive terms of confinement exceeding 30 days, and all of [the p]laintiff's disciplinary hearings at Shawangunk were conducted by the same individual").

Plaintiff's 110 days in SHU places him in the "intermediate" tier of analysis (*i.e.*, segregation lasting between 101 and 305 days). *See Brown v. Venettozzi*, No. 18-CV-02628, 2019 WL 4194432, at *4 (S.D.N.Y. Sept. 4, 2019). Under this framework, the Court cannot dismiss Plaintiff's due process claim at this juncture for a lack of a liberty interest. Indeed, as Plaintiff's period of confinement falls into the "intermediate" tier, "development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is *required*" to determine whether Plaintiff experienced an atypical and significant hardship. *Palmer*, 364 F.3d at 65 (emphasis added); *see also Koehl v. Bernstein*, No. 10-CV-03808, 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) ("[T]he fact-finding required by the Second Circuit to determine whether this intermediate sentence constitutes an atypical and significant hardship cannot occur on a motion to dismiss." (collecting cases)), *adopted by*, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011). The Court therefore turns to whether Plaintiff was given sufficient process.

B. Process

Liberally construed, the Complaint identifies three potential grounds for denial of due process. The Court will address each ground in turn. First, Plaintiff alleges that Defendant Fierro was "bias[ed]." (Compl. at 7). "Claims of hearing officer bias are common in Section 1983 cases

by inmate plaintiffs, and when they are based on purely conclusory allegations, they are routinely dismissed." *Richardson v. Williams*, No. 15-CV-04117, 2017 WL 4286650, at *10 (S.D.N.Y. Sept. 26, 2017). Plaintiff fails to offer any nonconclusory allegations of Defendant Fierro's purported bias. To that end, beyond his conclusory allegations, Plaintiff does not identify any actions during the Disciplinary Hearings reflecting Defendant Fierro's alleged bias. *See Edwards v. Gutwein*, No. 21-CV-03183, 2022 WL 1093558, at *6 (S.D.N.Y. Apr. 7, 2022).

Second, Plaintiff alleges that Defendant Rivera-Padilla submitted, and Defendant Fierro considered, "false" misbehavior reports. (Compl. at 5-7). But an inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Brown*, 2019 WL 4194432, at *5 (quoting *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see also Thomas v. Calero*, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011) ("The Second Circuit has long held, however, that a prison inmate has no constitutional right to be free from being falsely accused in a misbehavior report."). Plaintiff instead must identify some "procedural protections [that] were denied" to him "that would have allowed [] [him] to expose the falsity of the evidence." *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005). Plaintiff does not allege that Defendant Fierro denied him any procedural protections at the Disciplinary Hearings. Thus, even if Defendant Fierro considered false information submitted by Defendant Rivera-Padilla, that by itself did not violate Plaintiff's due process rights.

Finally, Plaintiff alleges that Defendant Fierro failed to give video evidence adequate weight. (Compl. at 6-7). But courts are not permitted to reweigh the evidence presented at prison disciplinary hearings; the "relevant question" instead "is whether there is any evidence in the record that could support the conclusion reached." *Superintendent, Massachusetts Corr. Inst.,*

13

*Walpole v. Hill*, 472 U.S. 445, 455–56 (1985) (explaining that "[a]scertaining whether" a prisoner has been afforded adequate process "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence"); *see also id.* ("We hold that the requirements of due process are satisfied if some evidence supports the decision[.]"). Plaintiff's own allegations confirm that Defendant Fierro's decisions were supported by "some evidence": Defendant Rivera-Padilla's reports and video recordings. (Compl. at 6-7). As such, Defendant Fierro's consideration of these materials satisfies the requirements of due process. *See Brown*, 2019 WL 4194432, at *7 (granting the defendants' motion to dismiss the plaintiff's procedural due process claim and rejecting the plaintiff's allegation that the disposition at the disciplinary hearing "went against the weight of the evidence" because it was supported by "some evidence"); *Maurer v. Keane*, No. 96-CV-03273, 1996 WL 732591, at *2 (S.D.N.Y. Dec. 19, 1996) (similar).

Accordingly, Plaintiff was provided adequate process, and his claim for denial of procedural due process against Defendant Fierro is dismissed.[5]

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motion to dismiss is GRANTED.

Per the Court's July 8, 2025 notice, the Court will hold an initial conference on August 26, 2025 concerning the remaining Defendants and claims in this action. (Doc. 67).

The Clerk of Court is respectfully requested to: (1) terminate Rodriguez, Burnett, and Fierro as Defendants; (2) terminate the pending motion (Doc. 56); and (3) mail a copy of this Opinion and Order to Plaintiff.

---

[5] Given the Court's ruling herein, the Court need not and does not address the Moving Defendants' other arguments for dismissal of Plaintiff's claims against Defendant Fierro. (Def. Br. at 19-23).

**SO ORDERED.**

Dated: White Plains, New York
        August 11, 2025

_____
PHILIP M. HALPERN
United States District Judge